1   Daniel M. Cislo, Esq., No. 125,378
2   Kelly W. Cunningham, Esq., No. 186,229
    CISLO & THOMAS LLP
3   1333 2nd Street, Suite 500
    Santa Monica, California 90401-4110
4   Telephone: (310) 451-0647
    Telefax: (310) 394-4477
5   Email: kcunningham@cislo.com
            dancislo@cislo.com

6   Attorneys for Plaintiff
7   Urban Home



8

9               **UNITED STATES DISTRICT COURT**

10             **CENTRAL DISTRICT OF CALIFORNIA**

11   URBAN HOME, a California     )   CASE NO. CV13-02361-JFW
12   corporation,                   )   (JCx)
                            )   **COMPLAINT FOR:**
13           Plaintiff,           )
                            )   **(1) TRADEMARK INFRINGEMENT;**
14   vs.                       )   **(2) FALSE DESIGNATION OF**
                            )   **ORIGIN;**
15   TECHNOLOGY ONLINE LLC, a   )   **(3) COMMON LAW TRADEMARK**
    Nevada limited liability company; and )   **INFRINGEMENT;**
16   DOES 1-10, inclusive,         )   **(4) STATE AND COMMON LAW**
                            )   **UNFAIR COMPETITION;**
17           Defendants.       )   **(5) CYBERSQUATTING; AND**
                            )   **(6) DECLARATORY JUDGMENT**
18                           )   **OF RIGHT TO OWN**
                            )   **URBANHOME.COM DOMAIN**
19                           )   **NAME**
20   _____ )

21

22       For its Complaint, Plaintiff Urban Home ("Urban Home") alleges and

23   asserts as follows:

24

25                       **I.**     **PARTIES**

26

27       1.     Urban Home is a corporation organized and existing under the laws

28   of the State of California, having a place of business at 3301 Sturgis Road,

    Oxnard, California 93010.

2.    Urban Home is informed and believes, and based thereon alleges that Defendant Technology Online LLC ("Technology Online") is a limited liability company organized under the laws of Nevada and having places of business within this judicial district and at 3395 South Jones Blvd., Suite 115, Las Vegas, Nevada 89146.

3.    The true names and capacities, whether individual, corporate or otherwise of Defendants Does 1-10 inclusive, are unknown to Urban Home, which therefore sues them by such fictitious names.  Urban Home will seek leave to amend this complaint to allege their true names and capacities when they have been ascertained.  Urban Home is informed and believes and thereon alleges that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged and that Urban Home's damages as herein alleged were proximately caused by those Defendants.  At all times herein mentioned, Defendants Does 1-10 inclusive were the agents, servants, or employees of their co-defendants, and in doing the things hereinafter alleged were acting within the course and scope of their authority as those agents, servants, or employees, and with the permission and consent of their co-defendants (hereinafter, collectively with the named defendants, "the Defendants").

## II.    JURISDICTION AND VENUE

4.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) as the trademark infringement and false designation of origin claims arise under an Act of Congress, namely the Federal Lanham Act, 15 U.S.C. §1051, et seq., including §§ 1114, 1121(a), and 1125(a). Additionally, the Court has subject matter jurisdiction over Urban Home's common law trademark infringement and state and common law unfair

2

competition claims pursuant to 28 U.S.C. § 1367 since the facts giving rise to these claims arise from the same common nucleus of operative facts as the Lanham Act claims.

5.     This Court has personal jurisdiction over Defendants pursuant to the United States Constitution and the California Long Arm Statute, Cal. Civ. Proc. Code §410.10 because, upon information and belief, the Defendants have offices within California as well as advertise using the accused trademark within California.

6.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) since, upon information and belief, Defendants have committed acts of infringement within this judicial district, including using the accused trademark to market products within this judicial district.

## III.   FACTUAL ALLEGATIONS

7.     Urban Home has been using the trademark URBAN HOME in commerce in connection with its sales of furniture and home furnishings since at least December 2000 ("the URBAN HOME trademark").   Urban Home has vigilantly policed and protected its rights and interests in and to the URBAN HOME trademark, including policing and acting to enforce its rights against unauthorized use of its trademark.   As a result, Urban Home has developed substantial goodwill and recognition among its customers and the public at large in its trademarks and products.

8.     Indeed, the United States Patent and Trademark Office has acknowledged Urban Home's rights in and to its Urban Home trademark by

CISLO & THOMAS LLP
Attorneys at Law
1333 2ND STREET
SUITE 500
SANTA MONICA, CALIFORNIA 90401-4110
TELEPHONE: (310) 451-0647   FACSIMILE: (310) 394-4477

granting Urban Home U.S. Trademark Registration No. 4,160,123 for URBAN HOME for "home furnishings, namely, furniture." Urban Home attaches hereto as Exhibit 1 a true and correct copy of the registration certificate for this federal trademark registration, which is, at this point, strong, distinctive, and well known among the public.

9.     Urban Home is informed and believes, and based thereon alleges that Technology Online is marketing furniture and home furnishings, of its own or of some of Urban Home's competitors, through at least its website, urbanhome.com. Urban Home attaches hereto as Exhibit 2 a true and correct copy of pages from the urbanhome.com website showing Defendants' prominent use of the URBAN HOME trademark right at the top of the home (first) page thereof in large letters with a stylized font.

10.     Urban Home did not consent to or authorize Technology Online to adopt or to make commercial use of URBAN HOME for Technology Online's products or services. Technology Online's unauthorized use of Urban Home's URBAN HOME trademark is and has been commercial in nature in that it uses the trademark to direct customers and potential customers to furniture and home furnishings being offered for purchase. The furniture and home furnishings that Technology Online directs the customers and potential customers to are direct competitors of Urban Home.

11.     Urban Home is informed and believes that Technology Online's unauthorized use of the URBAN HOME trademark is and has been willful and in bad faith from its adoption. In fact, it appears from a considerable record already that its acquisition of urbanhome.com domain name was in bad faith, which is the conclusion that the World Intellectual Property Organization reached in a written

CISLO & THOMAS LLP
Attorneys at Law
SUITE 500
1333 2ND STREET
SANTA MONICA, CALIFORNIA 90401-4110
TELEPHONE: (310) 451-0647   FACSIMILE: (310) 394-4477

4

Administrative Panel Decision on February 18, 2013. Urban Home attaches hereto as Exhibit 3 a true and correct copy of the February 18, 2013 Administrative Panel Decision for the World Intellectual Property Organization.

12. The Panel was convened to resolve an ICANN domain name dispute initiated by Urban Home over the urbanhome.com domain name. As detailed therein, the Panel Decision answers many of the issues involved in the present action. Yet, despite that Decision, Technology Online refused to hand over the domain name, and instead, filed suit in the United States District Court for the District of Nevada to challenge the Panel Decision.

13. Urban Home has no control over the nature and quality of the products and services to which Technology Online is and has been directing customers and potential customers who view its urbanhome.com website. Urban Home has no control over whether the products meet the professional standards and regulations which may apply at any particular locale where Technology Online's website may direct customers and potential customers. And, Urban Home has no control over the qualifications of Technology Online's employees or corporate decisions.

14. Urban Home's business goodwill in the URBAN HOME trademark is therefore in significant part at the mercy of the quality of Technology Online and will continue to be for so long as Technology Online is allowed to continue using the URBAN HOME trademark. Urban Home is informed and believes, therefore and based thereon alleges that Urban Home has suffered and will continue to suffer injury as a result of Technology Online's actions.

5

15. Urban Home believes that Technology Online's wrongful, unauthorized use of the URBAN HOME trademark is likely to cause consumer confusion with Urban Home's registered trademark, and, upon information and belief, believes that, as a result of the foregoing, there already is and has been actual confusion between Technology Online's use of URBAN HOME and Urban Home's federally registered URBAN HOME mark.

16. If permitted to continue, therefore, Technology Online's infringement will irreparably harm Urban Home, its reputation, and its goodwill. Technology Online's wrongful use of the URBAN HOME trademark dilutes the strength of Urban Home's registered trademark and tarnishes the image and reputation of Urban Home among the relevant consuming public.

17. If Defendants are permitted to maintain the urbanhome.com domain name, Urban Home will be kept from obtaining the domain name that is identical to its federally registered trademark and that is the most logical and reasonable address that Urban Home's customers and potential customers will wish to consult first to have access to Urban Home's furniture and home furnishings, irreparably harming Urban Home's reputation and goodwill it has in its URBAN HOME trademark.

## CLAIM I

### Infringement of Federally Registered Trademark
### (15 U.S.C. § 1114(1))

18. Urban Home repeats and incorporates the allegations set forth in paragraphs 1 through 17 above.

6

19.   Urban Home is using or has used the URBAN HOME trademark throughout the United States in connection with the goods and services specified above.  Urban Home owns the federally registered Urban Home trademark.  Its registration is at this point strong and distinctive.

20.   Urban Home is informed and believes, and based thereon alleges that Technology Online has been and continues to use the URBAN HOME trademark.

21.   The URBAN HOME trademark is very strong in light of the substantial marketing and promotion of Urban Home's goods and services for over twelve (12) years and the substantial sales volume of Urban Home's goods and services sold in connection with the URBAN HOME trademark.

22.   Urban Home does not consent to and has never consented to or authorized Defendants' use of the URBAN HOME trademark.

23.   Defendants' continued use of the URBAN HOME trademark will likely cause confusion or mistake, or will likely deceive the public as to Defendants' products being associated or identified with or being the same as those of Urban Home.

24.   Defendants therefore have infringed Urban Home's registered trademark in violation of Urban Home's federal trademark rights under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, particularly 15 U.S.C. § 1114(1).

25.   Defendants' continued use of the URBAN HOME trademark in connection with its goods and services identified above comprises willful, knowing, and deliberate infringement.

7

26.     Urban Home has no control over the composition or quality of the goods sold by Defendants under the URBAN HOME trademark.  As a result, to the extent Defendants' products are inferior to Urban Home's, Urban Home's valuable goodwill, developed at great expense and effort by Urban Home, is being harmed by Defendants' continued, unauthorized use of the URBAN HOME trademark, and is at risk of further damage.

27.     The goodwill of Urban Home's business under the URBAN HOME trademark is of significant value, and Urban Home will suffer irreparable harm should Defendants' infringement be allowed to continue to the detriment of Urban Home's reputation and goodwill.

28.     Defendants' infringement will continue unless enjoined.     Urban Home therefore seeks an injunction against further infringement.

## CLAIM II
### False Designation of Origin
### (15 U.S.C. § 1125(a))

29.     Urban Home repeats and incorporates the allegations set forth in paragraphs 1 through 28 above.

30.     The URBAN HOME trademark is distinctive and distinguish sales of home furnishings and furniture from those of its competitors.

31.     The URBAN HOME trademark is strong in light of the substantial marketing and promotion of Urban Home's products over the past twelve (12) years, the sales volume of its products, the critical acclaim of its products, and its

CISLO & THOMAS LLP
Attorneys at Law
SUITE 500
1333 2nd STREET
SANTA MONICA, CALIFORNIA 90401-4110
TELEPHONE: (310) 451-0647    FACSIMILE: (310) 394-4477

widespread public recognition.

32.    Defendants' continued use of the URBAN HOME trademark for identical or related goods and services creates a likelihood of confusion over the original, affiliation, or approval of such goods and services.

33.    Urban Home has no control over the composition or quality of the goods sold by Defendants under the URBAN HOME trademark, whether they be actual Urban Home products or third party products marketed under the URBAN HOME trademark.  As a result, to the extent Defendants' products are inferior to Urban Home's, Urban Home's valuable goodwill, developed at great expense and effort by Urban Home, is being harmed by Defendants' continued, unauthorized use of the URBAN HOME trademark, and is at risk of further damage.

34.    The goodwill of Urban Home's business under the URBAN HOME trademark is of enormous value, and Urban Home will suffer irreparable harm should Defendants' infringement be allowed to continue to the detriment of Urban Home's reputation and goodwill.

35.    Urban Home is informed and believes, and based thereon alleges that Defendants' infringement is willful, knowing, and deliberate, and Defendants' infringement will continue unless enjoined.   Urban Home therefore seeks a injunctive relief against further infringement.

///

///

///

## CLAIM III

### Common Law Trademark Infringement

36.    Urban Home repeats and incorporates the allegations set forth in paragraphs 1 through 35 above.

37.    Urban Home owns and uses the URBAN HOME trademark and enjoys common law rights in the URBAN HOME trademark in California and throughout the United States in connection with the all of the goods and services marketed thereunder.    Such rights are senior and superior to any rights which Defendants may claim in and to the URBAN HOME trademark.

38.    Defendants' use of the URBAN HOME trademark in connection with their products and/or services in commerce is intentionally designed to cause confusion regarding the source of Defendants' products.

39.    Defendants' infringement will continue unless enjoined.    Urban Home therefore seeks injunctive relief against further infringement.

## CLAIM IV

### Unfair Competition Under State Law

### (Cal. Business & Professions Code §§ 17200, 17203)

40.    Urban Home repeats and incorporates the allegations set forth in paragraphs 1 through 39 above.

41.    The URBAN HOME trademark is wholly associated with Urban Home due to its extensive use, and as such, Urban Home is deserving of having

10

the URBAN HOME trademark adequately protected with respect to the conduct of its business.

42. Defendants' use of the URBAN HOME trademark in connection with its furniture products in commerce is intentionally designed to cause confusion regarding the source of Defendants' products.

43. Defendants' acts constitute unfair competition in violation of the California Business and Professions Code §§ 17200 and 17203.

44. Urban Home avers that the acts of unfair competition undertaken by Defendants were intentionally and knowingly undertaken and were directed toward perpetuating a business competing unfairly with Urban Home and were done with a willful disregard for the rights of Urban Home.

45. By reason of Defendants' acts of unfair competition, Urban Home has suffered and will continue to suffer irreparable injury unless and until this Court enters an order enjoining Defendants from any further acts of unfair competition. Defendants' continuing acts of unfair competition, unless enjoined, will cause irreparable damage to Urban Home in that it will have no adequate remedy at law to compel Defendants to cease such acts. Urban Home will be compelled to prosecute a multiplicity of actions, one action each time Defendants commits such acts, and in each such action it will be extremely difficult to ascertain the amount of compensation which will afford Urban Home adequate relief. Urban Home is therefore entitled to an injunction against further infringing conduct by Defendants.

46.    In doing the acts alleged, Defendants acted willfully, fraudulently, oppressively, and maliciously, and, as such, Urban Home is entitled to an injunction against further infringement.

## CLAIM V
### Cybersquatting
### (15 U.S.C. § 1125(d))

47.    Urban Home repeats and incorporates the allegations set forth in paragraphs 1 through 46 above.

48.    Urban Home owns the URBAN HOME trademark, having continuously used it in commerce since at least December 2000 as a trademark for its furniture and home furnishing, among other goods and services.  It also owns U.S. Trademark Registration No. 4,160,123, the federal trademark registration for its URBAN HOME trademark.

49.    After more than twelve (12) years of continuous use, marketing and promotion, and substantial sales volume of Urban Home's goods and services sold in connection with the mark, the URBAN HOME trademark is very strong, distinctive, and well known.

50.    Urban Home has not given Defendants any authorization to use the URBAN HOME trademark.    Defendants nevertheless acquired the urbanhome.com domain name and subsequently used the URBAN HOME trademark thereon.  Defendants' domain name and mark are identical to Urban Home's federally registered trademark.

12

51.     Urban Home is informed and believes, and based thereon alleges that Defendants registered urbanhome.com in bad faith in order to profit from the URBAN HOME trademark at Urban Home's expense; that they have no intellectual property rights that would support an argument that registration of urbanhome.com was made in good faith; that they have no prior presence in the furniture or home furnishings trade that would support an argument that registration of urbanhome.com was made in good faith, and that Defendants never used the urbanhome.com domain name in connection with the bona fide offering of any goods or services.

52.     Instead, Urban Home is informed and believes, and based thereon alleges that Defendants are intending to divert Urban Home's customers and potential customers to competitors' website to extort an excessive fee from Urban Home in violation of the federal Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d).

53.     Urban Home has suffered, is suffering, and will continue to suffer irreparable injury for which it has no adequate remedy at law.

54.     Urban Home is entitled to an order directing that the urbanhome.com domain name be transferred to it.

55.     In order to protect the reputation and goodwill of the URBAN HOME trademark, Urban Home is also entitled to an order permanently enjoining Defendants from using the URBAN HOME trademark.

56.     Urban Home has been and is being damaged by Defendants' violation of the federal Anti-Cybersquatting Consumer Protection Act.     Urban Home,

therefore, is entitled to recover damages from Defendants in an amount to be proven at trial as a consequence of Defendants' activities.

57.    Defendants' conduct has been willful, wanton, and malicious, and done with a bad faith to profit.  Urban Home, therefore, is entitled to an award of its reasonable attorneys' fees and costs, profits, and treble its actual damages, pursuant to 15 U.S.C. § 1117(a).  Urban Home is also entitled to, among other things, the cost of corrective advertising.

58.    Urban Home is also entitled to, among other things, and if it so elects before final judgment, statutory damages of up to $100,000 for the urbanhome.com domain name pursuant to 15 U.S.C. § 1117(d).

59.    Under these circumstances, Urban Home is entitled to the urbanhome.com domain name.   In fact, the World Intellectual Property Organization came to this very conclusion recently on February 18, 2013, but Defendants refuse to transfer the domain name to Urban Home as the WIPO panel ordered.  (*See*, Exh. 3).

**CLAIM VI**

**DECLARATORY JUDGMENT OF RIGHT**

**TO OWN URBANHOME.COM DOMAIN NAME**

**(18 U.S.C. § 2201)**

60.    Urban Home repeats and incorporates the allegations set forth in paragraphs 1 through 59 above.

CISLO & THOMAS LLP
*Attorneys at Law*
SUITE 500
1333 2ND STREET
SANTA MONICA, CALIFORNIA 90401-4110
TELEPHONE: (310) 451-0647      FACSIMILE: (310) 394-4477

61.   The grounds for this count is 28 U.S.C. § 2201 since an actual case and controversy has arisen in which Technology Online professes to be entitled to register and maintain the urbanhome.com domain name, and, to the contrary, Urban Home, as the owner of the federally registered URBAN HOME trademark, contends that it is entitled to the urbanhome.com domain name.

62.   Similarly, the World Intellectual Property Organization on February 18, 2013 came to the same conclusion as Urban Home that Urban Home is entitled to the domain name and ordered Technology Online to transfer the same to Urban Home, and, to the contrary, Technology Online has refused to do so.

63.   As a result of Technology Online's registration and maintenance of the urbanhome.com domain name, Urban Home has suffered great loss.   If Defendants are permitted to maintain the urbanhome.com domain name, Urban Home will be kept from obtaining the domain name that is identical to its federally registered trademark and that is the most logical and reasonable address that Urban Home's customers and potential customers will wish to consult first to have access to Urban Home's furniture and home furnishings, irreparably harming Urban Home's reputation and goodwill it has in its URBAN HOME trademark.

64.   Urban Home therefore seeks a judgment declaring that it is entitled to have the urbanhome.com domain name immediately transferred to its ownership.

///
///
///

15

# **PRAYER FOR RELIEF**

WHEREFORE, Urban Home requests judgment against Defendants, as follows:

A.   For an order permanently enjoining Defendants, including Technology Online, and their officers, directors, agents, servants, attorneys, and employees and all other persons acting in concert with any of the Defendants, from committing any further acts of trademark infringement, including all use of the URBAN HOME trademark or any similar or colorable renditions thereof;

B.   For an order for Defendants, including Technology Online, to immediately transfer the urbanhome.com domain name to Urban Home;

C.   For an order directing Defendants to file with this Court and to serve on the Plaintiff within thirty (30) days after service on Defendants of the injunction granted herein, or such extended period as the Court may direct, a report in writing, under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction and order of the Court;

D.   For a judgment ordering Defendants to pay Urban Home all damages it incurred as a result of Defendants' infringement and other violations of the law;

E.   For an order for Defendants to pay Urban Home all statutory damages under the federal Anti-Cybersquatting Consumer Protection Act;

F.   For a judgment that Defendants have willfully and deliberately infringed Urban Home's rights and that this is an exceptional case;

G.     For an order increasing the damages award as a result of the willfulness of Defendants' infringements and on account that this is an exceptional case;

H.     For an order for the attorneys' fees and costs Urban Home has incurred in having to bring and sustain this action for the legal enforcement of its trademark rights; and

I.     For such other and further relief as this Court may deem just and equitable under the circumstances.

Respectfully submitted,

CISLO & THOMAS LLP

Dated: April 2, 2013       By:

Daniel M. Cislo, Esq.
Kelly W. Cunningham, Esq.

Attorneys for Plaintiff
Urban Home

T:\13-27528\Complaint - Urban Home v. Technology Online.Doc

17

## DEMAND FOR JURY TRIAL

Plaintiff Urban Home hereby demands a trial by jury as provided by Rule 38(a) of the Federal Rules of Civil Procedure and by the Local Rules of this Court.

Respectfully submitted,

CISLO & THOMAS LLP

Dated:  April 2, 2013                    By:   _____

Daniel M. Cislo, Esq.
Kelly W. Cunningham, Esq.

Attorneys for Plaintiff
Urban Home

T:\13-27528\Complaint - Urban Home v. Technology Online.Doc

**EXHIBIT 1**



# United States of America

## United States Patent and Trademark Office

# URBAN HOME

**Reg. No. 4,160,123**

**Registered June 19, 2012**

**Int. Cls.: 20 and 35**

**TRADEMARK**

**SERVICE MARK**

**PRINCIPAL REGISTER**

URBAN HOME (CALIFORNIA CORPORATION)
3301 STURGIS ROAD
OXNARD, CA 93030

FOR: HOME FURNISHINGS, NAMELY, FURNITURE, IN CLASS 20 (U.S. CLS. 2, 13, 22, 25, 32 AND 50).

FIRST USE 12-1-2000; IN COMMERCE 12-1-2000.

FOR: RETAIL AND ON-LINE STORE SERVICES FEATURING HOME FURNISHINGS AND FURNITURE, IN CLASS 35 (U.S. CLS. 100, 101 AND 102).

FIRST USE 12-1-2000; IN COMMERCE 12-1-2000.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PAR-TICULAR FONT, STYLE, SIZE, OR COLOR.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "HOME", APART FROM THE MARK AS SHOWN.

SEC. 2(F).

SER. NO. 85-319,550, FILED 5-12-2011.

LINDA ESTRADA, EXAMINING ATTORNEY



Director of the United States Patent and Trademark Office

---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL
TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE
DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten Years\***
**What and When to File:**

> ***First Filing Deadline:*** You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. *See* 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

> ***Second Filing Deadline:*** You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between the 9th and 10th years after the registration date.\* *See* 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

> You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

---

**The United States Patent and Trademark Office (USPTO) will NOT send you any future notice or
reminder of these filing requirements.**

---

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the USPTO. The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. *See* 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. *See* 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**EXHIBIT 2**

urbanhome

Looking to furnish your new home or do some remodeling? Urban Home has everything you need from urban furniture, decor, and unique furnishings.



· **Ads by Google**·    ► Decorating Rooms       ► Decorating Design       ► Modern Decorating       ► Decorating a Home

- Urban Home
- Urban Home Decor
- Home Decorating Ideas
- Home Interiors
- Home Decorating
- Home Furnishings

# Decorating the Modern Urban Home

Urban home decorating has grown increasingly popular recently. Minimalist designs, clean lines, and the banishment of unnecessary clutter combine to make a home that is warm and welcoming, but still fresh in its stylistic approach. Modern urban decorating is probably most at home in the city, but that is no reason why suburban, or even country, dwellers cannot adopt this appealing style of home décor. In fact, urban home decorating may be just what a cozy older suburban home needs to give it a much needed and ultra stylish update.

Modern décor can be an excellent choice for people at any point in life. People who are just setting up a household on their own are drawn to urban home decorating because of the hip sensibilities associated with the trend. Modern décor pieces can easily reflect a youthful, progressive attitude, while at the same time being sturdy furnishings that will stand the test of time.

Urban style home decorating is also a big hit with people who are looking to simplify and downsize. Empty nesters are intrigued by the designs because of the "a place for everything and everything in its place" mentality that often operates in conjunction with modern design sensibilities. Modern décor is all about reducing the clutter in living spaces to make them even more livable. Paring down possessions to just the essentials, and a few sentimental favorite decorative pieces, generally appeals to older adults who are readying themselves to enjoy the fruits of the many years they spent working.

Even families with growing children will find that urban home decorating is just exactly what their home needs. The clean, uncluttered look of modern design makes a nice counterpoint to the colorful jumble of children's toys on the floor in the family room. Modern decorating is all about finding a look that is attractive, but eminently livable too. This style puts a high premium on functionality, and young parents will find that the many creative storage options that come with urban living will make it easier to keep their kids' possessions under control and out of sight should a more formal gathering be planned.

Decorating the home with an urban sensibility is appropriate in just about any dwelling. For everything from rental apartments to mansions, this sleek, modern style can be tailored to fit any configuration. With rental properties, it is best to proceed with caution. Renters should always review the terms of their contract to be certain they are not in violation when making improvements to their space. They have the option of doing

merely cosmetic changes which can be easily packed up and removed when they find a different place to live. However, if they go for bigger changes, like new window treatments and chandeliers, they may need to make special arrangements with their landlord. Also, renters should exercise caution when painting, as some landlords do not permit certain colors that are difficult to paint over when the current tenant leaves.

Of course, people living in a space they own will have far more flexibility. Whether it is an apartment, a townhouse, a condo, or a stand-alone residence, the homeowner has a great deal of freedom to decorate their home however they wish. For more and more people, this leads to choosing a modern look with easy to maintain appeal over the long haul.

Decorating and re-decorating are definitely expensive pursuits, so homeowners should pace themselves carefully so as not to go over budget on their project. If necessary, they can focus on one room at a time, completely renovating it before moving on to another space in the house. The goal is to acquire a sophisticated, uncluttered look, but without making the rooms look empty or unused. It takes time to find the right balance, and the right pieces to complete the look, so homeowners should never rush into a purchase in an effort to simply "fill the room." Each piece should be given sufficient thought, and the homeowner will hopefully only buy things that they truly love, creating a unique and very personal atmosphere.

When decorating, it is always important to make precise measurements. This will ensure that pieces fit each room even before they are installed, and helps avoid costly errors that result in returns and other hassles. People living in apartments or condos that are high rises have extra measurements to take into account: the size of their service elevator. Remember that every piece of furniture, art, or other decorative item will have to be transported in an elevator. Measure the elevators to make sure they will accommodate the transportation of new furnishings.

Urban home style is catching on in every neighborhood. Its sleek, simple lines make it a hit with people of all ages living in every type of home.

## Sponsored Articles

### Top Furniture Outlet - LA
YourFurnitureNow.com/Los-Angeles
24 Red Hot Deals You Must See!
Free Delivery in Los Angeles.
► Sectional Sofas    ► Daily Deals





Featured Urban Home Furniture

## Browse More Articles

- Decorating the Modern Urban Home
- Urban Home Furniture Lends Homes a Sleek & Sophisticated Style

- [Urban Home Decor Utilizes Vibrant Color Schemes](#)
- [Modern Design Principles of Home Decorating Ideas](#)
- [Designing Home Interiors Like a Professional](#)
- [Modern Home Decorating Sometimes Blends the Old With the New](#)
- [Permanent Homes Deserve Amazing Home Furnishings](#)

**Ralph Lauren® Online**

www.RalphLauren.com

Shop the Official Site for Ralph
Lauren Apparel, Accessories &
More.



**The Perfect Light for You**

www.homedaylight.com

Put on Make-Up in the Right Light
with Solatube Natural Daylighting



**Pottery Barn®**

www.potterybarn.com

Official Site: Decorate & Entertain
with High-Quality Home
Furnishings.



AdChoices ▷

Copyright © 2013 [UrbanHome.com](#). All rights reserved.

[Sitemap](#)

**EXHIBIT 3**



**WIPO**
WORLD
INTELLECTUAL PROPERTY
ORGANIZATION

**ARBITRATION
AND
MEDIATION CENTER**

## ADMINISTRATIVE PANEL DECISION
Urban Home v. Technology Online LLC / Whois Privacy Service Pty Ltd.
Case No. D2012-2437

### 1. The Parties

Complainant is Urban Home of Oxnard, California, United States of America, represented by Cislo and Thomas LLP, United States of America.

Respondent is Technology Online LLC of Las Vegas, Nevada, United States of America / Whois Privacy Service Pty Ltd of Fortitude Valley, Queensland, Australia, represented by Rome & Associates, A.P.C., United States of America.

### 2. The Domain Name and Registrar

The disputed domain name <urbanhome.com> is registered with Fabulous.com (the "Registrar").

### 3. Procedural History

The Complaint was filed with the WIPO Arbitration and Mediation Center (the "Center") on December 12, 2012. On December 13, 2012, the Center transmitted by email to the Registrar a request for registrar verification in connection with the disputed domain name. On December 16, 2012, the Registrar transmitted by email to the Center its verification response disclosing registrant and contact information for the disputed domain name which differed from the named Respondent and contact information in the Complaint. The Center sent an email communication to Complainant on December 17, 2012, providing the registrant and contact information disclosed by the Registrar, and inviting Complainant to submit an amendment to the Complaint. Complainant filed an amended Complaint on December 19, 2012. In response to a notification by the Center that the amended Complaint was administratively deficient, Complainant filed a second amended Complaint on December 28, 2012.

The Center verified that the Complaint together with the amended Complaints satisfied the formal requirements of the Uniform Domain Name Dispute Resolution Policy (the "Policy" or "UDRP"), the Rules for Uniform Domain Name Dispute Resolution Policy (the "Rules"), and the WIPO Supplemental Rules for Uniform Domain Name Dispute Resolution Policy (the "Supplemental Rules").

In accordance with the Rules, paragraphs 2(a) and 4(a), the Center formally notified Respondent of the Complaint, and the proceedings commenced on January 8, 2013. In accordance with the Rules, paragraph 5(a), the due date for Response was January 28, 2013. The Response was filed with the Center on January 28, 2013.

The Center appointed Frederick M. Abbott as the sole panelist in this matter on February 1, 2013.  The Panel finds that it was properly constituted.  The Panel has submitted the Statement of Acceptance and Declaration of Impartiality and Independence, as required by the Center to ensure compliance with the Rules, paragraph 7.


## 4. Factual Background

Complainant is the owner of registration of the word trademark and service mark URBAN HOME on the Principal Register of the United States Patent and Trademark Office (USPTO), registration number 4160123, dated June 19, 2012, in international class (IC) 20, covering "Home furnishings, namely, furniture", and IC 35, covering "Retail and on-line store services featuring home furnishings and furniture".  Complainant's application for trademark registration was dated May 12, 2011.  Such application asserted first use and first use in commerce of December 1, 2000.  Complainant disclaimed the exclusive right to use "HOME" apart from the mark as shown.

Complainant's application for registration of the URBAN HOME trademark and service mark (hereinafter "trademark") was initially refused pursuant to a USPTO office action on grounds, *inter alia*, that the trademark was merely descriptive of the goods and services which it referenced.  To overcome this refusal Complainant submitted a signed declaration under Section 2(f) of the Lanham Act (15 USC §1052(f)) from its president, Constantino Papanicolaou, asserting personal knowledge that the trademark had become distinctive of the goods and services stated in the application through Complainant's substantially exclusive and continuous use in commerce for at least the five years date of the declaration.  Complainant's other evidence of use consisted of a website printout dated May 12, 2011.

Complainant operates a commercial website at "www.shopurbanhome.com".  According to a Domain Tools WhoIs report submitted by Respondent, the record of registration of the domain name <shopurbanhome.com> was created on September 19, 2006, and the Administrative contact was listed as Constantino Papanicolaou.  Respondent has submitted a record from the California Secretary of State showing a business entity named "Urban Home" with filing date of February 20, 2001, and its agent for service of process "Constantino A Papanicolaou".

Complainant's commercial URBAN HOME website refers to seven storefront locations in the State of California, including in Rancho Cucamonga, West L.A., Sherman Oaks, Oxnard, Valencia, Westlake Village and Simi Valley.

According to the Registrar's verification, Respondent Technology Online LLC is the registrant of the disputed domain name.  According to a Fabulous.com WhoIs record furnished by Complainant, the record of registration of the disputed domain name was created on March 30, 1998.  The Registrar's verification indicates "unsure as to the exact date" in response to the Center's routine query to indicate, if possible "the date on which the current registrant registered (or acquired the registration of) the [disputed] domain name(s)."  Respondent does not expressly state that it was the initial registrant of the disputed domain name.  It has not provided direct documentary evidence regarding the date on which it registered or acquired the disputed domain name.

Respondent has provided evidence of use of the disputed domain name in connection with an active commercial website dating from as early as October 1999, and identifying a furniture store in Dallas, Texas from as early as October 2000.  (Results from "web.archive.org").  An archive result from May 21, 2008 shows the disputed domain name being used in connection with a standard format link farm parking page with links, *inter alia*, to free credit reports and home furnishings.  The earliest website screen capture showing content substantially similar to that presently at the address identified by the disputed domain name is from July 17, 2011.

As of the initiation of this administrative proceeding, Respondent was using the disputed domain name to direct Internet users to a website identified by the heading "urbanhome" and containing content relating to

the furnishing of home interiors.  Subpages of the website covered subject matter such as the use of vibrant color schemes, and home decorating ideas such as blending old with new.  In addition to the substantive content, the website included a limited number of links to home furnishing suppliers, including Pottery Barn, San Clemente Furniture and AMFurnitureOnline.com.  The overall appearance of Respondent's website was not that of a standard format link farm parking page.  The content was well written.  There are only a few links to third-party home furnishing vendors.  As of February 17, 2013, there were no sponsored links appearing on Respondent's "www.urbanhome.com" website.[1]

Respondent has provided evidence that Constantino Papanicolaou, listed as the administrative contact of Complainant, and as the agent of the Urban Home legal entity in California, has been the subject of several trademark infringement lawsuits resulting in judgments adverse to him.  These include Jerry's Famous Deli, Inc. v. Papanicolaou, 383 F.3d 998 (9th Cir.  2004); and Tavistock Restaurants v. Constantino Papanicolaou, SACV11-00684, Cent. Dist. Cal., Stipulated entry of permanent injunction (amended), November 10, 2011 (defendant/Complainant represented by Complainant counsel in this proceeding).

Respondent has provided evidence that the terms "urban" and "home" are widely used in a descriptive sense in connection with commercial websites and general reporting.  A Google search of "urban home" conducted by the Panel on February 17, 2013 listed Complainant's "www.shopurbanhome.com" website as the first listing.  An unrelated store in Berkeley, California, "Urban Home Consignment Furniture" was listed second. Respondent's website identified by the disputed domain name was listed 13th.  A Google search of "urbanhome" showed Complainant's business first, with a number of sub listings; Respondent was listed fifth, and the unrelated aforementioned Berkeley store sixth.

The registration agreement in effect between Respondent and the Registrar subjects Respondent to dispute settlement under the Policy.  The Policy requires that domain name registrants submit to a mandatory administrative proceeding conducted by an approved dispute resolution service provider, of which the Center is one, regarding allegations of abusive domain name registration and use.  (Policy, paragraph 4(a)).

## 5. Parties' Contentions

### A. Complainant

Complainant alleges that it holds rights in the trademark URBAN HOME as evidenced by registration at the USPTO.  Complainant contends that the disputed domain name is identical to its registered trademark.

Complainant argues that Respondent lacks rights or legitimate interests in the disputed domain name because it offers pay-per-click advertisement and articles on home design on its website, and is not a *bona fide* offering of goods and services.  Complainant refers to the content on Respondent's website as "freely accessible articles on home design and decoration", and asserts that Respondent is not engaged in a "meaningful offering of goods or services."  Complainant contends that Respondent is using the disputed domain name in a field of commerce overlapping Complainant's registered trademark, that Complainant's mark has been used since December 2000, is well known, and that Respondent should have been aware of its trademark "when it modified the urbanhome.com domain name to contain the currently displayed content."

Complainant alleges that Respondent has not been commonly known by the disputed domain name, and has been attempting to secure income from it without having a legitimate interest.  Complainant refers to the fact that the Registrar "is a leading premium service for domain name professionals, and in order to receive an invitation to the service you must have a domain portfolio that generates at least $750 per month or you must transfer over 750 domains to Fabulous."  Complainant contends that the Registrar specializes in generating pay-per-click revenues through providing relevant content and images.

[1] Panel visit of February 17, 2013.

Complainant contends that Respondent is not making a legitimate noncommercial or fair use of the disputed domain name because the content and images are presented to maximize click through rates or advertisements. According to Complainant, this diverts Internet traffic from Complainant to third parties that are in direct competition with it, and this does not constitute legitimate noncommercial or fair use.

Complainant contends that Respondent registered and is using the disputed domain name in bad faith because the domain name was registered to prevent Complainant from reflecting its mark in a corresponding domain name. Complainant argues that by holding numerous domain names for profit, Respondent has prevented Complainant from using its trademark in a corresponding domain name. Complainant contends that, although the record of registration of the disputed domain name was created on March 1988, "there is no evidence that the domain was used since the creation date in good faith or at all. In fact, the last modification date of the site is July 9, 2012…, Well after Complainant's first use of its mark, showing that content may have been added to knowingly benefit from Complainant." Complainant suggests that because Respondent modified its registration after the date of registration of Complainant's trademark, Respondent had at least constructive knowledge at that time of Complainant's registered trademark, and that Respondent's modification of its website would infringe that trademark.

Complainant contends that Respondent registered and is using the disputed domain name in bad faith to direct Internet users to a page that offers pay-per-click advertisement and links to third-party competitors of Complainant, which is for commercial gain and disrupting Complainant's business. According to Complainant, Respondent acquired the disputed domain name and modified its website content in bad faith to intentionally attract for commercial gain Internet users to Respondent's website by creating confusion with Complainant acting as source, sponsor, affiliate or endorser of Respondent's website.

Complainant request the Panel to direct the Registrar to transfer the disputed domain name to Complainant.

**B. Respondent**

Respondent argues that Complainant has no trademark rights to oppose to the disputed domain name because the term "urban home" is, at best, merely descriptive, and that "generic and descriptive words will generally not be transferred to a complainant even when a complainant has a trademark." Respondent provides dictionary definitions of "urban" and "home" and states that the "union of these terms identifies a place of residence or refuse [sic] near a city." Respondent contends that various websites, businesses, news articles and blogs offer advice, products and services for an "urban home". Respondent indicates that the Examining Attorney at the USPTO refused registration of Complainant's trademark because of its merely descriptive character. Respondent contends that the term "urban home" is generic, and that Complainant has no rights in it.

Respondent states that the disputed domain name was registered in 1998, before Complainant existed, and that the disputed domain name has been used since 1998 for the marketing, advertising and sale of home furnishings and decoration, and is a news and information outlet for Internet users. According to Respondent, Complainant has no rights that supersede those of Respondent. Respondent indicates that Complainants evidence of use of its trademark submitted to the USPTO is from 2011, and that Complainant's website address domain name was registered no earlier than September 2006. Respondent refers to use of the disputed domain name in 2003 in connection with a Dallas, Texas furniture store named "Urban Home", and that this website preceded Complainant's 2006 initiation of its web presence. Respondent states that it "has used the Domain to broadcast its legitimate offering of its services since registering it in 1998", whereas Complainant's principal domain name was registered in 2006, and has been used by Complainant since 2007 only.

Respondent contends that Complainant has not provided evidence sufficient to support secondary meaning in the generic term "urban home" despite representations to the contrary to the USPTO. Respondent indicates that the USPTO has been used registration of various trademarks incorporating the term "urban home" in the very broad class claimed by Complainant. Respondent indicates that the USPTO required disclaimer of exclusive rights in the term "home" by Complainant, and that Complainant should not be

permitted to claim rights in a term that was expressly disclaimed.

Respondent argues that it has rights and legitimate interests in the disputed domain name because Respondent is in the business of marketing, advertising and selling home furnishings and decorations, and providing related news and information; the disputed domain name was registered in 1998, and up until receiving notice from the Center of this dispute, Respondent had no knowledge of Complainant's trademark. Respondent asserts that it has made in making legitimate fair use of the disputed domain name by providing information relating to the generic interpretation of "urban home". Respondent indicates that it is not using the disputed domain name to misleadingly divert consumers or tarnish trademarks, but rather simply to provide information. Respondent indicates that it is not important if it is directing Internet users to competitors of Complainant, because Complainant's mark is generic and can be used to describe any of Complainant's competitors.

Respondent indicates that use of a domain name in connection with generating pay-per-click revenues is not illegitimate *per se*, but must be assessed in the context of any rights the registrant may have or otherwise. Respondent argues that there is generally no ground for a complainant if a respondent registers a wholly descriptive term and uses it solely in connection with what it describes. Complainant indicates that the preponderance of its website is made up of content regarding furnishing an "urban home', and that this is no different than use by "Urban Home Magazine", which is a concurrent noninfringing use.

Respondent argues that it has not registered and used the disputed domain name in bad faith, and that Complainant has not satisfied its burden of proof. Respondent states that there is no evidence that it registered or acquired the disputed domain name primarily for the purposes of selling it. Respondent indicates it has received no offers to purchase the disputed domain name. Respondent states that it has not attempted to attract Internet users to its website for commercial gain because "Any semblance of to [sic] Complainant's mark lends itself wholly to the genericness of the mark that complainant purports to enforce its exclusive rights." Respondent indicates that nothing on its website associates it with Complainant.

Respondent argues that many of Complainant's allegations are unsupported by evidence, and that registering and holding multiple domain names does not constitute bad faith. Respondent contends that Complainant has made no showing that Respondent modified content on its website in response to Complainant's registration of its trademark. Respondent contends that pay-per-click advertising is a minimal portion of its website content, and is not in bad faith. Respondent states that two precedential UDRP panel decisions cited by Complainant involved typo squatting, which is not present here.

Respondent contends that while it might be deemed to be on constructive notice of Complainant's trademark, in fact it had no knowledge of that trademark, particularly as the disputed domain name was registered well before the trademark was registered and used in commerce. Respondent argues that registration of multiple domain names is not evidence of bad faith, even if those domain names are held for profit.

Respondent argues that Complainant has acknowledged the 1998 registration date for the disputed domain name, which was years before Complainant's first use of its trademark, which establishes that Respondent did not register the disputed domain name in bad faith, and that Complainant has the burden to show bad faith. According to Respondent, it is not its burden to demonstrate "good faith" where Complainant has failed to carry its burden. Respondent argues that if doubts remain in light of the evidence, Complainant should not succeed. Respondent argues that allegation without proof does not establish bad faith.

Respondent asks that the Panel make a finding of reverse domain name hijacking against Complainant. Respondent argues that Complainant "empowered by its counsel, have made it a practice to infringe on proprietary rights". In this regard, it refers to trademark litigation in which a principal of Complainant has been found to have infringed trademark rights, and/or has consented to permanent injunction to resolve the alleged infringement. Respondent argues that in this proceeding Complainant, its agent, and its trademark counsel "endeavor to usurp a domain which legitimately belongs to and is used by Respondent".

Respondent argues that the Complaint is "replete with unwarranted assumptions and unsupported allegations", and that Complainant has distorted facts.  According to Respondent, Complainant would have that any subscriber to Fabulous.com would be liable for bad faith.  Respondent says that it has thoroughly set forth its rights and documented its evidence, in the face of a groundless Complaint.  Respondent argues that this proceeding was initiated primarily to harass the domain name holder.  Respondent argues that Complainant's counsel has engaged in reprehensible conduct.

Respondent concludes that if the case is a close one, the Panel should lean towards Respondent's view.

Respondent requests the Panel to reject the Complaint and to make a finding of reverse domain name hijacking against Complainant.

## 6. Discussion and Findings

The Policy is addressed to resolving disputes concerning allegations of abusive domain name registration and use.  The Panel will confine itself to making determinations necessary to resolve this administrative proceeding.

It is essential to the Policy proceedings that fundamental due process requirements be met.  Such requirements include that a respondent have notice of proceedings that may substantially affect its rights.  The Policy and the Rules establish procedures intended to ensure that respondents are given adequate notice of proceedings commenced against them, and a reasonable opportunity to respond (see, *e.g.*, Rules, paragraph 2(a)).

The Center notified the Complaint to Respondent and Respondent filed its Response in a timely manner.  The Panel is satisfied that Respondent was notified of the Complaint and was afforded a reasonable opportunity to respond.

Paragraph 4(a) of the Policy sets forth three elements that must be established by a complainant to merit a finding that a respondent has engaged in abusive domain name registration and use, and to obtain relief.  These elements are that:

(i)  the disputed domain name is identical or confusingly similar to a trademark or service mark in which complainant has rights;  and

(ii)  respondent has no rights or legitimate interests in respect of the disputed domain name;  and

(iii)  the disputed domain name has been registered and is being used in bad faith.

Each of the aforesaid three elements must be proved by a complainant to warrant relief.

## A. Identical or Confusingly Similar

Complainant has provided evidence of registration of the trademark and service mark (hereinafter "trademark") URBAN HOME on the Principal Register of the USPTO, and evidence of use of that trademark in commerce in the United States.  Registration on the Principal Register establishes a presumption of validity under the Lanham Act, though such presumption is subject to challenge (15 U.S.C. § 1115(a)) (see generally *Park 'N Fly v. Dollar Park and Fly*, 469 U.S. 189 (1985)).[2]  In a proceeding alleging trademark

---

[2] The elements subject to challenge vary depending, *inter alia*, on whether the owner of registration has filed an affidavit of incontestability.  Because registration of the URBAN HOME trademark was granted in 2012, Complainant's trademark is not yet eligible for incontestable status.  See generally regarding incontestability, *Diet Center Worldwide, Inc. v. Jason Akatiff*, WIPO Case No. D2012-1609.

infringement, the accused infringer is entitled to establish that the owner of registration does not enjoy trademark rights.

In this proceeding, Respondent first has alleged that the trademark term at issue, URBAN HOME, is generic for a place of residence or refuge near a city.  By "generic", Complainant means that the term refers to a genus or class of thing, and that exclusive trademark rights may not be established in respect to the genus or class of thing to which it refers.  See *Park 'N Fly v. Dollar Park and Fly*, 469 US 189, 194; see also *Fine Tubes Limited v. Tobias Kirch, J. & J. Ethen, Ethen Rohre GmbH*, WIPO Case No. D2012-2211.

In support of this contention, Respondent has submitted independent Wikipedia entries for the terms "urban" and "home", as well as news and information stories using "urban home" to refer to a residence or dwelling in a city, and Internet search results showing some businesses other than those of Complainant using the term "urban home" in their names.

The Panel concurs with Respondent's view that the term "urban home" may be generic for a residence in a city.  However, Complainant has not secured trademark registration for the term "urban home" in connection with residences located in cities.  It has, instead, secured trademark registration for use of the term in connection with home furnishings, namely furniture, and services featuring home furnishings and furniture (*see* Factual Background, *supra*).  URBAN HOME is not being used by Respondent to identify a city dwelling, but rather to identify furniture and related services.  For this reason, the Panel does not consider Complainant's trademark invalid or unenforceable because it is generic, and rejects Respondent's argument that Complainant therefore lacks enforceable rights in a trademark.

Alternatively, Respondent argues that Complainant's trademark is merely descriptive, by which it means that Complainant purports to own rights in a descriptive term for which it has not established the requisite consumer association or secondary meaning.

In response to an initial refusal by the USPTO examiner of registration for URBAN HOME on grounds of mere descriptiveness, Complainant provided two forms of evidence.  The first was a declaration by its president attesting to his personal knowledge that the trademark had been in substantially exclusive and continuous use in commerce for a period of five years preceding the date of the declaration.  The second was a printout of its website dated May 12, 2011.

The trademark examiner accepted the affidavit and printout submitted by Complainant as sufficient to establish secondary meaning for purposes of registering Complainant's URBAN HOME trademark.  The affidavit of the president is just that.  It is a personal representation (subject to penalty for willful false claims).  *See* USPTO Trademark Manual of Examining Procedure, October 2012, at §§611.03(a), 804.01(b) & 1212.05(d).  In a litigation to enforce a trademark, the trademark registration owner may yet need to provide additional evidence of use of the trademark in commerce.

In the present administrative proceeding, Respondent has challenged the length of use of the URBAN HOME trademark asserted by Complainant, and has provided its own evidence suggesting that significant use by Complainant has taken place substantially more recently than asserted by Complainant.  However, Respondent has conceded that Complainant in 2006 registered the domain name principally associated with its URBAN HOME online presence, "www.shopurbanhome.com", and has provided evidence (in the form of a web archive printout) that Complainant maintained an online presence as URBAN HOME as of March 2007.  Given the evidence that Complainant has established a number of URBAN HOME retail outlets in California, the Panel is inclined to accept that Complainant has used its trademark in commerce for at least several years.

In its application for trademark registration, Complainant asserted first use and first use in commerce of URBAN HOME in 2000, but assertions of first use do not establish any evidentiary presumption (see *Dow Jones & Company, Inc. v. Idea Studios LLC dba Envent*, WIPO Case No. D2009-1033), and there is little or no evidence on the record of this proceeding to suggest that Complainant used the URBAN HOME trademark in commerce to identify home furnishings and related services as early as 2000 (although it did

establish a business entity with the name Urban Home in California in February 2001).

The Panel considers that Respondent has failed to overcome the presumption that Complainant owns rights in the trademark URBAN HOME by having acquired distinctiveness or secondary meaning in that term in connection with home furnishings, in particular furniture, and services relating thereto.  Pursuant to the Lanham Act (15 U.S.C. §1057(c)), the filing date of an application for registration constitutes constructive use of the mark, conferring a nationwide right of priority, contingent on registration of the mark.  See *Dow Jones & Company, Inc. v. Idea Studios LLC dba Envent*, WIPO Case No. D2009-1033.  Complainant submitted its application for trademark registration to the USPTO on May 12, 2011.  The Panel will otherwise revert to "when" Complainant established trademark rights in its discussion of the element of bad faith.

The disputed domain name, <urbanhome.com>, is for purposes of the Policy identical to Complainant's URBAN HOME trademark.

Complainant has established that it owns rights in the URBAN HOME trademark, and that the disputed domain name is identical to that trademark.

## B. Rights or Legitimate Interests

The second element of a claim of abusive domain name registration and use is that respondent has no rights or legitimate interests in respect of the domain name (Policy, paragraph 4(a)(ii)).  The Policy enumerates several ways in which a respondent may demonstrate rights or legitimate interests:

> "Any of the following circumstances, in particular but without limitation, if found by the Panel to be proved based on its evaluation of all evidence presented, shall demonstrate your rights or legitimate interests to the domain name for purposes of paragraph 4(a)(ii):
>
> (i)     before any notice to you of the dispute, your use of, or demonstrable preparations to use, the domain name or a name corresponding to the domain name in connection with a *bona fide* offering of goods or services;  or
>
> (ii)    you (as an individual, business, or other organization) have been commonly known by the domain name, even if you have acquired no trademark or service mark rights;  or
>
> (iii)   you are making a legitimate noncommercial or fair use of the domain name, without intent for commercial gain to misleadingly divert consumers or to tarnish the trademark or service mark at issue."  (Policy, paragraph 4(c))

Complainant has argued that Respondent lacks rights or legitimate interest because:  (1) Respondent has not made a *bona fide* offering of goods or services prior to notice of this dispute in that, among other things, Respondent is using Complainant's trademark to divert Internet users to competing third-party providers of goods and services in order to earn pay-per-click revenues;  (2)  Respondent has not been commonly known by the disputed domain name, and;  (3) Respondent has not made a legitimate noncommercial or fair use of the disputed domain name, without intent for commercial gain to misleadingly divert consumers, in that its use of the disputed domain name to divert Internet users to competitors of Complainant does not constitute fair use, and because the content of Respondent's website is designed to attract Internet users for advertising purposes, and does not represent legitimate noncommercial or fair use.  Complainant has made a *prima facie* showing that Respondent lacks rights or legitimate interests in the disputed domain name.

Respondent consistently refers to the initial registration date of the disputed domain name in 1998 as the basis for establishing its rights or legitimate interests in the disputed domain name.  Nowhere in its Response does Respondent indicate when it acquired the disputed domain name, and its Registrar has not furnished that information.  It appears from the evidence submitted by Respondent that other parties owned registration of the disputed domain name when it was initially registered and for some time thereafter since Respondent has not suggested any relationship to the businesses (such as a furniture store in Dallas,

Texas) that were earlier identified by the disputed domain name. Had Respondent been associated with those prior registrants, Respondent presumably would have provided that information in light of the importance of such facts to this proceeding.

Respondent furnished a website printout addressed by the disputed domain name from May 21, 2008 showing a standard format link farm parking page. The first archive printout showing a website substantially similar to that operated by Respondent as of the date this proceeding is dated July 17, 2011, with a copyright notice date of 2011. In the absence of additional evidence from Respondent concerning the date on which it acquired the disputed domain name, the Panel draws the inference that Respondent acquired the disputed domain name some time at or about July 17, 2011, and began to use the disputed domain name in connection with its commercial website at or about that time.

Complainant provides evidence that the professional service, Fabulous.com, through which Respondent registers the disputed domain name, has established a business model of providing content to domain name registrants intended to attract pay-per-click advertising revenues. This business model is explicitly described in the About Us and Information Center at Fabulous.com. As noted in the Factual Background, *supra*, the content provided on Respondent's website is well written and consistent with providing information to consumers regarding design and furnishing of urban residences. The content pages also include links to sellers of home furnishings, including furniture, that are in direct competition with Complainant.

Respondent appears to be operating a new model of sophisticated link farm using "better than average" content to attract Internet users to its pay-per-click advertisers. The Panel draws this inference in light of the explicit explanation of this business model by Respondent's professional service provider, Fabulous.com.

In this respect, the Panel has been tasked with deciding whether a business model using a descriptive trademark term with website content reasonably associated with that term, and directing Internet users to third-party competitors of the trademark owner, constitutes fair use of the trademark term.

From the standpoint of the Panel, the key element here is that the website associated with the disputed domain name is advertising and providing links to businesses directly competitive with those of Complainant, the trademark owner. As noted earlier, the trademark URBAN HOME may be generic for a residence in a city, but it is not generic for home furnishings. If Respondent had used the trademark term to advertise houses or condominiums located in cities, the Panel might well determine that Respondent had rights to use that generic term in the disputed domain name in connection with that genus or class of thing.

URBAN HOME does not describe furniture, or services in connection with furniture. Respondent is not using that trademark term in a directly descriptive sense. It is instead using Complainant's unique trademark identifier to direct Internet users to third-party advertisers competitive with the home furnishing business of Complainant. In the view of the Panel, this does not constitute fair use of Complainant's trademark term.

The Panel has inferred that Respondent acquired the disputed domain name on or about July 17, 2011. Complainant submitted its application for trademark registration for URBAN HOME on May 12, 2011. The USPTO electronically publishes information regarding applications for trademark registration shortly after filing. The USPTO database is easily searched. The Panel considers that Respondent had at least constructive notice of Complainant's trademark when it acquired the disputed domain name, and should have anticipated a dispute. Moreover, the Panel determines that Complainant has not made a *bona fide* offering of goods and services at the website identified by the disputed domain name.

There is no evidence that Respondent had been known by the disputed domain name at the time it acquired it.

The Panel determines that Complainant has established that Respondent lacks rights or legitimate interests in the disputed domain name. Respondent is using Complainant's distinctive trademark term to operate a commercial website directing Internet users to third-party providers of goods and services competitive with those of Complainant.

**C. Registered and Used in Bad Faith**

Paragraph 4(b) of the Policy indicates that certain circumstances may, "in particular but without limitation", be evidence of the registration and use of a domain name in bad faith.  These are "(i) circumstances indicating that [the respondent has] registered or [the respondent has] acquired the domain name primarily for the purpose of selling, renting, or otherwise transferring the domain name registration to the complainant who is the owner of the trademark or service mark or to a competitor of that complainant, for valuable consideration in excess of [the respondent's] documented out-of-pocket costs directly related to the domain name;  or (ii) [the respondent has] registered the domain name in order to prevent the owner of the trademark or service mark from reflecting the mark in a corresponding domain name, provided that [the respondent has] engaged in a pattern of such conduct;  or (iii) [the respondent has] registered the domain name primarily for the purpose of disrupting the business of a competitor;  or  (iv) by using the domain name, [the respondent has] intentionally attempted to attract, for commercial gain, Internet users to [the respondent's ] web site or other on-line location, by creating a likelihood of confusion with the complainant's mark as to the source, sponsorship, affiliation, or endorsement of [the respondent's] web site or location or of a product or service on [the respondent's] web site or location."

There is little or no evidence to support a finding in this proceeding that Respondent registered the disputed domain name for the purpose of selling, renting or otherwise transferring it to Complainant or a third party for valuable consideration in excess of its out-of-pocket expenses in connection therewith.  There is similarly little or no evidence that Respondent registered or used the disputed domain name for the purpose of disrupting Complainant's business.

Complainant has argued that Respondent has engaged in a pattern of registering the trademarks of third parties to prevent those third parties from registering their trademarks in corresponding domain names.  But, aside from noting that Fabulous.com operates a business model which encourages ownership of registration of substantial quantities of domain names, Complainant has provided no evidence that Respondent has registered any domain name other than the disputed domain name incorporating the trademark of a third party.

Respondent appears, however, to be using the disputed domain name for commercial gain by attempting to attract Internet users to its website by creating a likelihood of confusion with Complainant's trademark as to Complainant acting as source, sponsor, affiliate or endorser of Respondent's website.  Respondent appears to be using the URBAN HOME trademark of Complainant in the disputed domain name in the expectation that Internet users will visit Respondent's website, and thereupon links on Respondent's website will divert those Internet users to third-party competitors of Complainant.

This brings the Panel to the jurisprudential crux of this proceeding.  Namely, whether Respondent registered the disputed domain name at a time when Complainant owned rights in its URBAN HOME trademark?  Further to substantial precedent of panels rendering decisions under the Policy, including this Panel, a respondent may not be found to act in bad faith to register a domain name prior to the complaining party having established rights in its trademark (with some potential narrow exceptions not relevant here).  See generally *Diet Center Worldwide, Inc. v. Jason Akatiff*, WIPO Case No. D2012-1609.

Respondent is represented by sophisticated counsel.  In its Response, Respondent consistently relies on the initial registration of the disputed domain name on March 30, 1998.  By any of Complainant's own accounts, that 1998 initial registration took place prior to Complainant's establishment of rights in the URBAN HOME trademark.  And, if that initial registration had been undertaken by Respondent (or a party affiliated by ownership with Respondent), it would be exceedingly problematic for Complainant to succeed on its claim that Respondent registered and is using the disputed domain name in bad faith.

In its Response, Respondent studiously avoided any explicit statement regarding the date on which it acquired the disputed domain name, even though it presented substantial evidence from which it may be inferred that Respondent was not the initial registrant.  It is the view of this Panel that if Respondent was in a

position to have established that it acquired the disputed domain name prior to Complainant having establishing trademark rights, Respondent would have done that.

The best information available to the Panel suggests that the disputed domain name was acquired by Respondent on or about July 17, 2011.  That date is subsequent to the priority of Complainant's rights in its trademark, which date back at least to the filing date of its application for registration, May 12, 2011.  Even if that sequencing is imperfect in terms of the date on which Respondent acquired the disputed domain name, Complainant has submitted evidence of use in commerce of what would have been an unregistered or common law trademark dating back at least several years prior to its application for trademark registration.  The Panel does not consider it necessary to establish a precise date on which Complainant may have established common law trademark rights.

The Panel considered going back to Respondent for additional evidence regarding the date at which Respondent acquired the disputed domain name.  However, it appears to the Panel that Respondent (as represented by counsel) should have been well aware of the importance of establishing that date for purposes of this proceeding, and the fact that it did not do that implies that it acquired the disputed domain name relatively recently.

As noted by this Panel in *Diet Center Worldwide, Inc. v. Jason Akatiff*, WIPO Case No. D2012-1609, there is recent precedent in the Ninth Circuit Court of Appeals of the USA (*see GoPets v. Hise*, 657 F.3d 1024 (9th Cir. 2011)), suggesting that, at least under the Anticybersquatting Consumer Protection Act (ACPA), a domain name which is initially registered prior to the existence of trademark rights may be transferred between unrelated parties without considering the circumstances under which it has been acquired by the transferee.  The Panel refers to its decision in *Diet Center Worldwide, supra,* for discussion and analysis of this jurisprudence.  As explained in that decision, this Panel, however, considers that the transferee of a domain name unrelated to the initial registrant engages in a new registration upon the transfer.  The new registration incorporates the terms of the Policy and the contract representations of the registrant.  This does not mean that a transferee may not under appropriate circumstances legitimately acquire a domain name which incorporates terms in which a third party holds trademark rights.  It does mean that the new registration is tested under the terms of the Policy.

The Panel determines that Respondent acquired and registered the disputed domain name after Complainant acquired trademark rights in URBAN HOME, and that Respondent is using the disputed domain name for commercial gain to attract Internet users to its website location by creating confusion as to Complainant acting as source, sponsor, affiliate or endorser of Respondent's website within the meaning of paragraph 4(b)(iv) of the Policy.  Respondent registered and is using the disputed domain name in bad faith.

The Panel will direct the Registrar to transfer the disputed domain name to Complainant.

The Panel does not make a finding of reverse domain name hijacking against Complainant.


## 7. Decision

For the foregoing reasons, in accordance with paragraphs 4(i) of the Policy and 15 of the Rules, the Panel orders that the disputed domain name <urbanhome.com> be transferred to Complainant.


**Frederick M. Abbott**
Sole Panelist
Date:  February 18, 2013

**VERIFICATION**

I, the undersigned, do hereby declare:

1.   I am President and Chief Executive Officer of Urban Home  I am authorized to make this verification for and on its behalf and make this verification for that reason.

2.   I have read the foregoing Complaint, and know its contents.

3.   I hereby verify that the facts stated in the foregoing Complaint are true of my own knowledge, except as to those facts which are stated on information and belief, and as to those facts, I believe them to be true.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 28 day of March, 2013 at    OXNARD    , California.

URBAN HOME

Constantino Papanicolaou
President and CEO

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge John F. Walter and the assigned discovery Magistrate Judge is Jacqueline Chooljian.

The case number on all documents filed with the Court should read as follows:

## CV13- 2361 JFW (JCx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

==========================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:



| [✓] Western Division | [ ] Southern Division | [ ] Eastern Division |
| --- | --- | --- |
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
for the

| | |
|---|---|
| URBAN HOME, a California corporation, <br><br> *Plaintiff(s)* <br><br> v. <br><br> TECHNOLOGY ONLINE LLC, a Nevada limited liability company; and DOES 1-10, inclusive, <br><br> *Defendant(s)* | ) ) ) ) ) ) ) ) ) ) ) )    Civil Action No. **CV 13 - 02361**-JFW (JG) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)* Technology Online, Inc.
3395 South Jones Blvd., Suite 115
Las Vegas, NV 89146

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are: Daniel M. Cislo, Esq., No. 125,378
Kelly W. Cunningham, Esq., No. 186,2'29
CISLO & THOMAS LLP
1333 2nd Street, Suite 500
Santa Monica, California 90401-4110
Telephone:  (310) 451-0647
Telefax:  (310) 394-4477

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

CLERK OF COURT

Date: APR - 2 2013           MARILYN
*Signature of Clerk or Deputy Clerk*